**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PATRICIA B. DIAZ ACEVEDO; ANTONIO GUZMAN AND THE COMMON LAW MARRIAGE COMPOSED BETWEEN THEM**<br><br>Plaintiffs,<br><br>vs.<br><br>**USA PARKING SYSTEM OF PUERTO RICO, INC.; ABC INSURANCE COMPANIES, DEF UNKNOWN DEFENDANTS**<br><br>Defendants. | CIVIL NO.<br><br>RE: TITLE VII; GENDER DISCRIMINATION; SEXUAL HARASSMENT HOSTILE WORKING ENVIRONMENT; RETALIATION; CONSTRUCTIVE DISCHARGE.<br><br>**REQUEST FOR SUMMARY PROCEEDINGS UNDER 42 U.S.C. § 2000e-5(f)(5)**<br><br>PLAINTIFFS DEMAND TRIAL BY JURY AND PUNITIVE DAMAGES |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Patricia B. Diaz Acevedo ("Diaz") and her common law husband Antonio Guzman ("Guzman"), through their undersigned counsel and very respectfully **ALLEGE, SOLICIT,** and **PRAY**:

## I. NATURE OF THE ACTION AND JURISDICTION

1. Plaintiffs invoke this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought forth pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as a result of Defendant USA Parking Systems Puerto Rico, Inc.'s ("USA Parking") continuous unlawful and willful employment practices (gender discrimination, hostile work environment, sexual harassment, and retaliation), which led to multiple continuous violations of Diaz's civil

rights due to her gender (sexual harassment, hostile working environment) and retaliation because she engaged in several statutorily protected activities under Title VII and Puerto Rico laws grieving about her hostile working environment which eventually led to her unlawful constructive discharge. Such discrimination caused severe emotional, mental, and economic damages for both Diaz and her common law partner, Guzman.

2. Plaintiffs further invoke this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico's Constitution and other laws invoked herein because such claims arise from the same nucleus of operative facts giving rise to Diaz's claims under federal law.

3. Plaintiffs also invoke the Honorable Court's supplemental and pendent party jurisdiction to hear and adjudicate their claims against all named party defendants arising under the following Puerto Rico Laws: Act No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194 *et seq.*; Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146, *et seq*.; Act No. 69 of July 6, 1985, 29 L.P.R.A. §§ 1321 *et seq.*; Act No. 17 of April 22, 1988, 29 L.P.R.A. §§ 155 *et seq*.; Articles 1536, 1540 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 10801, 10805 and Article II, Sections 1, 8 and 16 of Puerto Rico's Constitution.

4. On or about November 3, 2022, Diaz timely filed an Employment Discrimination and Retaliation Charge with the Equal Employment Opportunity Commission's ("EEOC") Office located in San Juan, Puerto Rico, Case No. 515-2023-00048, claiming gender discrimination, sexual harassment hostile working environment and retaliation against her former employer Defendant USA Parking.

5. On July 10, 2024, the EEOC issued a Letter of Determination in case No. 515-2023-00048 where such agency determined: “Evidence obtained does establish a violation under Title VII. Specifically, that Charging Party was sexually harassed by her supervisor, and that Respondent’s management failed to take corrective actions to stop the harassing conduct after she complained.” Upon finding that there was reason to believe that a violation of Title VII had occurred, the EEOC attempted to eliminate the unlawful practices by informal methods of conciliation.

6. On July 31, 2024, the EEOC decided that the efforts to conciliate Diaz’s charge as required by Title VII were unsuccessful.

7. On July 31, 2024, the EEOC issued and notified the corresponding Notice of Right-To-Sue.

8. In a timely manner after the receipt of above-mentioned Right-To-Sue Notice, Plaintiffs file the present lawsuit claiming violations to Title VII and the Commonwealth of Puerto Rico’s laws cited too herein.

9. Diaz seeks redress for the damages she suffered and continues to suffer as a result of Defendant USA Parking’s continuous unlawful employment discrimination on the basis of her gender (sexual harassment and hostile working environment), violation of her constitutional rights to dignity, and for retaliation because she engaged in various statutorily protected activities by opposing unlawful employment practices, among other activities described herein below.

10. Diaz was retaliated after she grieved to her supervisors and other USA Parking personnel that she had been the victim of sexual harassment at her workplace

and because her former employer woefully failed to remedy such egregious gender discrimination as required by Federal and Commonwealth of Puerto Rico laws.

11. Plaintiff Guzman's tort claims are "wholly derivative [from his common law partner's discrimination and retaliation claims] and, thus, [their] viability is contingent upon the viability of the underlying employment discrimination claims." *Costa-Urena v. Segarra*, 590 F.3d 18, 30 (1st Cir. 2009) (quotation omitted*); accord Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 258, n.7 (1st Cir. 2000) (*citing Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1* (1994)).

12. Venue is proper in this district under 28 U.S.C. § 1391(b) (1), (2). Venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this judicial district of Puerto Rico. 28 U.S.C. § 1391(b).

13. Diaz hereby specifically invokes 42 U.S.C. § 2000e-5(f)(5) to request that her Title VII claims in this case be in every way expedited.

## II. THE PARTIES

14. Diaz is a female citizen of the United States of America, of legal age, and resident of Bayamón, Puerto Rico Diaz is the common law partner of Plaintiff Guzman. Diaz was born on January 17, 2001.

15. Plaintiff Guzman is a male citizen of the United States of America, of legal age, and resident of Bayamón, Puerto Rico. Guzman is the common law partner of Plaintiff Diaz.

16. At all relevant times of the facts alleged in this Complaint, Diaz was an employee within Title VII's protected class.

17. At all the relevant times of the facts alleged in this Complaint, Diaz was an "employee" within the definition of such terms as defined by Title VII, 42 U.S.C. § 2000e(f). Diaz was also an "employee" within the definition of such terms as provided by the Commonwealth of Puerto Rico laws that have been invoked herein.

18. USA Parking is considered a "person" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(a).

19. At all times relevant to this Complaint, USA Parking was engaged in an "industry affecting commerce" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e (h).

18. At all times relevant to this Complaint, USA Parking was also an "employer" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(b) and the laws of Puerto Rico that have been invoked herein.

19. At all times relevant to this Complaint, USA Parking employed fifteen (15) or more employees.

20. At all times relevant to this Complaint, USA Parking employed Diaz. As such, USA Parking was Diaz' employer.

21. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto were in full effect and cover the liabilities and/or unlawful acts which were committed by defendant USA Parking herein mentioned.

22. Plaintiffs are using the fictitious names of ABC Insurance Companies because at this time they do not know the real names of such insurance companies. Once the real names become known, Plaintiffs will substitute those fictitious names with the real names of such party defendants.

23. Defendants DEF are other parties that have engaged in unlawful acts against Diaz and Guzman. Plaintiffs are using the fictitious names of DEF because at this time they do not know the real names of such party defendants. Once the real names become known, Plaintiffs will substitute those fictitious names with the real names of such party defendants.

24. All defendants have received actual knowledge of Diaz's administrative charge filed claiming sex/gender discrimination, sexual harassment, hostile working environment; and retaliation, which were administratively filed before the EEOC.

25. All Defendants jointly participated in continuous acts of unlawful employment discrimination and retaliation against Diaz on account of her gender and because Diaz engaged in statutorily protected activity by grieving, denouncing, and opposing unlawful employment practices in violation of Federal and Puerto Rico laws.

26. All defendants are jointly liable for the damages caused to Plaintiffs Diaz and Guzman.

## III. FACTUAL NARRATIVE COMMON TO ALL CLAIMS

27. On May 17, 2022, Diaz commenced working as a Cashier for USA Parking. From May 9 until May 13, 2022, Diaz underwent training for her job.

28. At the start of her employment relationship with USA Parking, Diaz was first assigned to work at the Convention Center at the Sheraton Hotel, in San Juan, Puerto Rico.

29. On or about September 24, 2022, Diaz was finishing the "Bank-out" procedure at her register, when her immediate supervisor, Jose Flores, without her consent started massaging her shoulders while he spoke to her about his problems at

home to distract her from her work. She felt intimidated and immediately informed him that she did not want to be touched and advised him that his conduct was unwelcome.

30. On or about September 25, 2022, during Diaz's "midnight" shift, Supervisor Jose Flores and Luis Rios, another employee, were in the area of the register. While Diaz was sitting in front of her accounting computer looking for the new "Bank out", Supervisor Flores started touching Diaz's calves without her consent. Immediately thereafter, Flores leaned his body against hers and Diaz became frozen with fear and moved her legs so he would stop touching her. However, Supervisor Flores continued physically rubbing her. When she was able to overcome her fear, Diaz stood up from the chair she had been sitting on so that Flores would not be able to touch her and rapidly left the cashier area.

31. Shortly thereafter, Diaz decided to call Plaintiff Antonio Guzman to inform him what had taken place and that she felt uncomfortable with Flores' unwelcome sexual conduct.

32. On September 26, 2022, in the early hours of the morning, Antonio Guzman went to Diaz's work area arriving there at about 12:00am to confront Supervisor Flores about his conduct, while he was at his work shift. When Guzman arrived, he asked Diaz about the whereabouts of her supervisor Flores. Diaz replied that Flores was out in front, and Guzman then approached him and asked him where the parking supervisor was. After Guzman inquired how many years he had been working at USA Parking, Flores replied that he had been working there for ten (10) years.

33. Guzman informed Flores that he was looking for a Supervisor to talk to him/her concerning what had happened to Diaz. Flores replied that he was the only

supervisor on shift and Guzman explained to him that a supervisor was touching her inappropriately. Both Flores and Guzman then walked to the garage cashier area where Diaz was working so she could be present during their conversation.

34. When both Guzman and Flores arrived at where Díaz was working, Flores asked Diaz if she knew who Guzman was and Díaz replied that Guzman was her boyfriend. Guzman then inquired from Flores if he had received any personnel training on labor and sexual harassment policies, and Flores answered affirmatively because USA Parking had provided such training to its employees.

35. Guzman then stated that Flores should then understand that an employee's body is private, and Flores replied, in a challenging fashion, that he understood. Guzman then asked Flores if he knew the consequences of his actions. Flores replied, "Yes, I could lose my job."

36. Guzman explained to Flores that he was not looking for trouble but just an opportunity to have a dialogue about Flores' prior conduct towards Diaz and not have him be terminated from his employment and Flores thanked him for this. Guzman then requested Flores to abstain from engaging in his prior unwelcome conduct of physically touching Diaz. During this meeting, Flores asked Diaz if she had any problems with him and she replied that she had and explained that she felt uncomfortable when Flores touched or caressed her, much less without her consent. Flores apologized for his prior conduct, but stated that "between colleagues that is what we do."

37. Guzman reiterated to Flores that, as a supervisor, he should respect a person's physique and personal space without exception. Flores once again apologized for his conduct to Guzman and Diaz. Flores gave his word that this conduct would not

repeat itself and that he unconsciously engaged in such behavior. Guzman advised Flores that he cannot work unconsciously when he has to comply with his work duties. Flores acquiesced and stated that should there be any other inconvenience, Diaz should report the incident to another supervisor. Flores once again apologized and regretted his conduct.

38. On September 30, 2022, Diaz received a phone call from Supervisor Samaira Aguirre to inform her that she had knowledge of what had happened on September 26, 2022. Aguirre informed Diaz that Flores had called to inform her about the events that occurred that night, referring to the inappropriate physical contact without Diaz's consent as well as the meeting with Guzman. Aguirre asked Díaz what had happened with Flores and Diaz complained to Aguirre as to Flores' conduct towards her.

39. Aguirre asked Diaz if she would be able to continue to work with Flores. Diaz replied that she felt nervous and uncomfortable working alongside Flores, but she was willing to comply with her job duties and understood her employer was taking measures to protect her from Flores. Diaz was led to believe that her grievance was duly being processed.

40. Aguirre then requested Diaz submit in writing the events that had taken place with Flores. Aguirre also informed Diaz that she would be signing a document that was required by USA Parking.

41. On October 1, 2022, Diaz delivered the cash register and the document detailing the facts involving her sexual harassment grievance related to Flores' conduct towards her. Aguirre informed Diaz that her sexual harassment complaint would be given to Mrs. Viky Collazo, USA Parking's Supervisors Manager. One week after Diaz

submitted her internal sexual harassment complaint, Diaz asked Aguirre about the status of her complaint and Aguirre informed Diaz that it had been notified to Collazo and that she had not taken any action. Diaz further inquired about the USA Parking document that she was required to sign. However, Aguirre responded that Diaz did not have to sign any document.

42. After Diaz asked about the USA document she had to sign, Aguirre asked Diaz why she was asking, Diaz answered that she wanted to know the status of her internal sexual harassment complaint because USA Parking continued to assign Diaz to the same work shift as Flores, where he continued with his unwelcome conduct towards Diaz.

43. On October 16, 2022, Collazo, Aguirre, and Diaz met during her midnight shift, relating to a text message that Diaz had sent Collazo earlier that day, at around 3:17am. In her text, Diaz complained about her employer's inaction as to her internal sexual harassment grievance and the fact that neither Collazo nor Aguirre was being ethical or moral in understanding the impact of Diaz continuously being placed under Flores' immediate supervision and facing the continued unwelcomed sexual harassment towards her. She also mentioned that US Parking had not offered her any type of protection from her harasser, since Flores had been assigned as her supervisor for the past three weeks before.

44. During the October 16, 2022 meeting, Collazo and Aguirre informed Diaz that her internal sexual harassment grievance was not to be evaluated because Diaz had not signed it and it was not dated. Collazo and Aguirre further informed Diaz that her sexual harassment was not to be evaluated because Diaz allegedly agreed to continue

working alongside Flores. However, Díaz agreed to continue working during the same shift as Flores because Diaz was falsely led to believe that USA Parking would comply with its own personnel policies prohibiting sexual harassment and labor harassment, and measures would be put into effect without Diaz having to lose work hours.

45. Also during this meeting on October 16, 2022, Collazo pretextually advanced on various occasions that she could not act upon Diaz's sexual harassment grievance because it was not signed and dated by her. Aguirre then intervened and stated she had not counseled Diaz correctly on the required format of the sexual harassment grievance.

46. During the meeting on October 16, 2022, Collazo asked if Diaz felt uncomfortable working alongside Flores and she replied that she did not feel comfortable working with Flores. Diaz once again repeated the facts that took place on September 26, 2022, involving Flores' inappropriate conduct towards her and that Flores had invited Diaz to rent an apartment so that they could live together. Flores' comments to Diaz further constitute verbal sexual harassment against Diaz.

47. Diaz also complained that if her sexual harassment grievance was not remedied, she would be further grieving to other managerial employees involving this process. Collazo was well aware of Diaz's sexual harassment grievance since October 3, 2022, yet she was still scheduled the same work shift as her sexual harasser during multiple work shifts.

48. It was not until after the meeting on October 16, 2022, after two hours of Diaz pleading her case with USA Parking's management officials, where she became emotionally distraught, USA Parking belatedly agreed for Diaz to be relocated to another

work shift where she would not be supervised by Flores. While Flores remained undisciplined for his sexual harassment, Diaz lost working hours due to her relocation.

49. On October 17, 2022, Quiñones, USA Parking's Director of Human Resources, phoned Diaz and informed her that she had only become aware of Diaz's sexual harassment the day before, that is, October 16, 2022. USA Parking took no prompt remedial action to resolve Diaz's internal sexual harassment grievance in violation of its personnel policies involving this type of unlawful employment discrimination.

50. After Diaz engaged in statutorily protected conduct of complaining about sexual harassment, her former employer, USA Parking, took no action for over three (3) weeks to promptly address Diaz' internal grievance, in violation of its own personnel policies involving unlawful sex discrimination, and in direct retaliation of Diaz's actions.

51. On October 24, 2022, Diaz filed a criminal complaint against Flores at Puerto Rico Police Precinct No. 266, Department of Sexual Crimes. Such criminal complaint case was assigned Case No. 2022-1-266-6813.

## III. FIRST CAUSE OF ACTION

### (TITLE VII: Gender Discrimination, Sexual Harassment, Hostile Working Environment, and Retaliation)

52. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them hereto by reference.

53. Defendant USA Parking has willfully violated Title VII's provisions by engaging in discriminatory employment practices and retaliation against Diaz on account of her gender and by engaging in statutorily protected activities.

54. Defendant USA Parking has engaged and/or permitted that Diaz be subject to gender discrimination and a sexually harassing and hostile working environment and never remedied this discrimination.

55. Diaz hereby requests back pay, that she be reinstated back to her former employment and that she be compensated for her economic and emotional damages. Plaintiff Diaz demands compensation for her emotional damages in an amount of not less than $300,000.00.

## IV. SECOND CAUSE OF ACTION
## (Violation of Constitutional Rights)
## (Article II, Sections 1, 3, 8, 16 and 20 of Puerto Rico's Constitution)

56. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

57. Defendants have further violated Plaintiff Diaz's rights under Article II, Sections 1, 8, 16, and 20 of Puerto Rico's Constitution by violating her protected rights to privacy, dignity, reputation, safety, and health at the workplace and by being discriminated against based on her gender.

58. Plaintiff Diaz is entitled to compensatory damages and back pay. Plaintiff Diaz has suffered considerable economic and personal damages as a result of USA Parking's willful conduct, including the discrimination she was subjected to as well as retaliation. Plaintiff Diaz demands compensation for these damages in an amount of not less than $500,000.00.

59. Diaz prays that judgment be entered on her behalf and against the Defendants and that she be awarded all relief available to her by law.

## V. THIRD CAUSE OF ACTION
## (Violation to Puerto Rico Laws Nos. 115, 100, 69, 17 and Arts. 1536, 1540 of Puerto Rico's Civil Code)

60. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

61. Defendant USA Parking has violated Diaz's rights secured under Puerto Rico Acts Nos. 115, 100, 69, 17 and Articles 1536 and 1540 of Puerto Rico's Civil Code previously cited herein. USA Parking has discriminated against Diaz on account of her gender as she was sexually harassed and further retaliated against her for having engaged in statutorily protected conduct.

62. Defendant USA Parking has also violated Plaintiff Guzman's rights and has caused him considerable economic and emotional damages. Plaintiff Guzman is entitled to compensatory damages because of Defendant USA Parking's unlawful conduct towards his common law wife, Díaz. Plaintiff Guzman demands compensation for these damages in an amount of not less than $500,000.00.

63. Plaintiff Diaz is also entitled to compensatory damages, back pay and reinstatement. Plaintiffs have suffered economic and personal damages because of Defendants' unlawful conduct.

**WHEREFORE**, premises considered, Plaintiffs pray that this Honorable Court enter Judgment against defendants and grant Plaintiffs the following relief:

(a) An award of compensatory damages, including but not limited to back pay and front pay and prejudgment interests, of not less than $450,000.00;

(b) An award of double compensatory damages under Acts Nos. 115, 100, 90, 17;

(c) An award of costs and reasonable attorney's fees;

(d) An award for punitive damages;

(e) An award for damages for Guzman under Articles 1536, 1540 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 10801, 10805.

(f) Any other and further relief, which this Court may deem just, and proper

(g) Reinstatement of Diaz to her prior job position.

(i) A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of October 2024.

**s/ JOSÉ G. FAGOT DÍAZ**
**DORNA-LLOMPART LAW OFFICE**
**USDC PR No. 204112**
**Attorney for Plaintiff**
1353 Ave. Luis Vigoreaux
PMB 805
Guaynabo, PR 00966
Tel:(787) 367-8702
email: jgf@fagot-law.com
josegabrielemilio@gmail.com